UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 06-10088-RCL

UNITED STATES OF AMERICA

v.

STEVEN R. BELANGER
ROBERT J. BELANGER

**REPORT AND RECOMMENDATION RE:**
**MOTION TO DISMISS COUNT I (DOCKET ENTRY # 36);**
**MOTION TO DISMISS COUNTS II AND III**
**(DOCKET ENTRY # 37)**

**March 31, 2008**

**BOWLER, U.S.M.J.**

Pending before this court are two motions to dismiss filed by defendant Robert J. Belanger ("Robert Belanger") and his son, defendant Steven R. Belanger ("Steven Belanger").  After conducting a hearing on March 11, 2008, this court took the motions (Docket Entry ## 36 & 37) under advisement.


PROCEDURAL BACKGROUND

On April 5, 2006, an Indictment issued charging Steven Belanger with two counts of filing false individual income tax returns for the years 1999 and 2000 in violation of 26 U.S.C. § 7206(1).  The Indictment charged Steven Belanger with under reporting on Schedule C the gross receipts of a sole proprietorship he owned and operated, Number One Foundations.

On April 5, 2007, a Superceding Indictment issued against

Robert Belanger as well as Steven Belanger.  Eight days later,
the government moved to dismiss the original Indictment with
prejudice under Rule 48, Fed. R. Crim. P., because of the
Superceding Indictment.  The court allowed the motion.

The three count Superceding Indictment charges both
defendants with conspiracy to defraud the United States by
dishonest and deceitful means by attempting to impair the
function of the Internal Revenue Service ("the IRS") to collect
income tax in violation of 18 U.S.C. § 371 ("section 371").
Count Two charges Steven Belanger and Count Three charges Robert
Belanger with a corrupt endeavor to impair and impede the tax
laws in violation of 26 U.S.C. § 7212(a) ("section 7212").


<u>STANDARD OF REVIEW</u>

Filed under Rule 12(b)(3)(B), Fed. R. Crim. P. ("Rule
12(b)"), the first motion seeks to dismiss Count One.  The second
motion seeks to dismiss counts two and three.  Under a Rule 12(b)
motion, this court "assumes all facts in the indictment to be
true and views all facts in the light most favorable to the
government." <u>U.S. v. Mubayyid</u>, 476 F.Supp.2d 46, 50 (D.Mass.
2007).  Although Robert and Steven Belanger ("the defendants")
maintain that the Superceding Indictment fails to state certain
elements of the charged offenses, they submit additional facts
evidencing less nefarious activity than that charged in the
Superceding Indictment.  <u>See</u> <u>Id</u>. (insofar as Rule 12(b)(2)

"motion to dismiss relies on disputed facts, the motion should be denied"); 24 James Wm. Moore <u>Moore's Federal Practice</u> § 612.02 (2007) ("A Rule 12 motion to dismiss is not the proper way to raise a factual defense").

<u>BACKGROUND</u>

During the relevant time period, Robert and Steven Belanger owned and operated a single business, Number One Foundations. Number One Foundations is a concrete foundation business located in Centerville, Massachusetts that serves residential and commercial customers.  Robert and Steven Belanger both live on the same road in Centerville, Massachusetts.  During the past 20 years, Robert Belanger has made efforts to transfer the business to his son.

In the 1999 and 2000 tax years, both Robert and Steven Belanger filed individual tax returns with attached Schedule Cs reporting the gross receipts of Number One Foundations.[1]  The tax returns understated the actual gross receipts of Number One Foundations.  In the 1999 tax year, Steven and Robert Belanger respectively reported $826,317 and $86,544 of gross receipts. The combined $912,861 total, however, fell $276,805 short of the

---

[1]  Steven Belanger filed joint tax returns for both years. Robert Belanger filed individual tax returns for both years.
    Part of the shared purpose between Steven and Robert Belanger to conceal the taxable income of Number One Foundations from the IRS was to file separate tax returns for the single business owned and operated by both of them.

actual combined gross receipts of $1,189,666.  In the 2000 tax
year, they understated the total gross receipts of Number One
Foundations in a combined amount of $214,147.  Viewing the facts
in the government's favor, filing the tax returns understating
the actual gross receipts of the business on the Schedule Cs led
to a tax deficiency and a loss to the government in both tax
years.[2]

Between January 1998 and December 2000, Steven Belanger
regularly presented Cape Cod Five Cents Savings Bank with
customer checks from Number One Foundations.  He did not,
however, deposit all of the checks into Number One Foundations'
bank account.  Instead, he instructed the bank teller to split
transactions into deposits, treasurer's checks and cash.  (Docket
Entry # 15, ¶ 13).

Between January 1998 and December 2000, Steven Belanger
purchased 83 treasurer's checks using customer checks from Number
One Foundations.  The checks, usually made payable to Robert

_____

[2]  The defendants fail to show that the pretrial dismissal
with prejudice of the original Indictment was a "fact-based
resolution of the elements charged" or otherwise serves to
foreclose the above finding as opposed to a dismissal for other
reasons.  See U.S. v. Dionisio, 503 F.3d 78, 84-85 (2nd Cir.
2007).  They do not cite legal authority to support the
significance of the court's pretrial dismissal of the original
Indictment with prejudice.  See LR. 7.1 & 112.1.
    In any event, the finding regarding the filing of a false
tax return is not required for this court's recommendation.

Belanger, totaled $424,069.[3]   Steven Belanger also frequently
purchased multiple treasurer checks, typically made payable to
Robert Belanger, on a single day in amounts less than $10,000.[4]
For example, on May 30, 1998, Steven Belanger purchased six
treasurer's checks each made payable to Robert Belanger in the
amount of $8,000.   On 17 occasions, Steven Belanger purchased
treasurer's checks that in the aggregate exceeded $10,000 but had
the bank teller prepare multiple treasurer's checks with no
single check exceeding $10,000.   The treasurer's checks and the
customer checks used to purchase them were never deposited into
Number One Foundations' bank account.

In or around November 2000, Cape Cod Five Cents Savings Bank

---

[3]   The Superceding Indictment lists each one of the 83
transactions by check number, date, payee and amount.

[4]   The defendants point out that currency transaction
reports ("CTRs") apply to cash not checks, which leave a paper
trail.   This court accepts the position *arguendo*, in other words,
only for purposes of resolving the motions to dismiss.   Cf. U.S.
v. Morales-Rodriguez, 467 F.3d 1, 11 (1st Cir.) (rejecting
argument that checks below $10,000 made out to the defendant and
*cashed* on the same day for aggregate amount of more than $10,000
fell outside ambit of section 5324 simply because the
transactions involved checks), cert. denied, __U.S.__, 127 S.Ct.
696 (2006); see also U.S. v. St. Michael's Credit Union, 880 F.2d
579, 594 (1st Cir. 1989) (multiple checks cashed at different
times on the same day did not require aggregation).
Using multiple customer checks, Steven Belanger would
instruct the bank teller to deposit some of the money, to convert
some of the money to treasurer's checks and to convert some of
the money to cash.   (Docket Entry # 15, ¶ 13).   The Superceding
Indictment does not include facts indicating that the converted
cash totaled more than $10,000 in any one day and/or at any one
time.

notified Robert Belanger about certain outstanding and
potentially abandoned property in the form of treasurer's checks
made payable to him.  Robert Belanger instructed the bank teller
to re-negotiate the treasurer's checks, which totaled $120,903,
in the same amounts.[5]  He declined the teller's suggestion to
deposit the checks or to reissue the checks as one or two large
treasurer's checks.

On March 27, 2001, IRS agents interviewed Robert Belanger
about the treasurer's checks.  He told the agents, falsely, that
either he or his girlfriend purchased the treasurer's checks.
Steven Belanger, however, purchased the treasurer's checks.

The purpose of the conspiracy charged in Count One "was to
defraud the United States by systematically concealing hundreds
of thousands of dollars of taxable income and profits the
defendants earned from their business, known as Number One
Foundations."  (Docket Entry 36, ¶ 6).  Overt acts to accomplish
this purpose include the filing by Steven and Robert Belanger of
the aforementioned 1999 and 2000 joint and individual tax
returns.  Other overt acts consist of each of the 83 purchases of
treasurer's checks made payable to Robert and Steven Belanger
from the customer checks for work performed by Number One
Foundations.

---

[5]  The Superceding Indictment lists the 21 treasurer's
checks that Robert Belanger had reissued in the same amounts.
None of the old or the reissued treasurer's checks exceeded
$10,000.

Both Steven and Robert engaged in a corrupt endeavor by:
(1) hiding the actual gross receipts of Number One Foundations
from their tax preparer; (2) filing the 1999 and 2000
aforementioned joint and individual tax returns that understated
the gross receipts of Number One Foundations; (3) hiding the
actual gross receipts of Number One Foundations by not depositing
the receipts into the bank account of Number One Foundations; and
(4) structuring the purchase of the treasurer's checks so as not
to trigger the preparation or filing of a CTR.

Steven Belanger also hid the gross receipts of Number One
Foundations from the IRS by purchasing the treasurer's checks
from the business' customer checks and receipts.  Additional
concealment took place when Steven Belanger instructed the bank
teller to make the treasurer's checks payable to his father as
opposed to Number One Foundations.  Robert Belanger's corrupt
endeavor additionally includes falsely reporting to IRS agents in
March 2001 that he or his girlfriend purchased the treasurer's
checks.


<u>DISCUSSION</u>

I.  <u>Count One</u>

Count One charges the defendants with violating section 371.
The defendants seek to dismiss the Superceding Indictment on the
basis that a disparity in gross receipts or the mere failure to
report the income of Number One Foundations does not, without

7

more, equate to fraudulent activity in violation of section 371.
The defendants maintain that the illicit purpose element of
section 371 is therefore absent from the Superceding Indictment.
Arguing that a one man conspiracy presents a legal impossibility,
the defendants allege there was no shared purpose, no concealment
of taxable income and no unlawful structuring.  Simply presenting
customer checks and instructing the bank teller to prepare
multiple treasurer's checks is not illegal structuring, according
to the defendants.  They also point out that they conducted their
financial activity in plain sight.  Generally speaking, the
defendants maintain that the Superceding Indictment fails to
state certain elements of the charged offenses.

"'An indictment is sufficient if it, first, contains the
elements of the offense charged and fairly informs a defendant of
the charge against which he must defend, and, second, enables him
to plead an acquittal or conviction in bar of future prosecutions
for the same offense.'"  U.S. v. Cianci, 378 F.3d 71, 81 (1st
Cir. 2004) (quoting Hamling v. United States, 418 U.S. 87, 117
(1974)).  Put another way, "An indictment is sufficient if it (1)
contains the elements of the offense charged and fairly informs
the defendant of the charge against which he must defend, and (2)
enables him to plead an acquittal or conviction in bar of future
prosecutions for the same offense."  U.S. v. Sedlak, 720 F.2d
715, 719 (1st Cir. 1983); accord U.S. v. Yefsky, 994 F.2d 885,
893 (1st Cir. 1993) (indictment sufficient "if it contains the

elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and enables him to enter a plea without fear of double jeopardy"). The indictment should therefore "be specific enough to notify the defendant of the nature of the accusation against him and to apprise the court of the facts alleged." U.S. v. Brown, 295 F.3d 152, 154 (1st Cir. 2002). Although there is no prescribed formulation, an indictment is "generally sufficient" if it sets "forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" U.S. v. Cianci, 378 F.3d at 81; accord U.S. v. Brown, 295 F.3d at 154 (same); U.S. v. Serino, 835 F.2d 924, 929 (1st Cir. 1987).

Furthermore, although an indictment "may incorporate the words of a statute to set forth the offense," the statutory language in the indictment "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." U.S. v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000). Where, as here, the charged conspiracy and corrupt endeavor to impair or impede the tax laws depends upon the underlying fraud against the IRS, the "'indictment must do more than simply repeat the language of the criminal statute.'" U.S. v. Yefsky, 994 F.2d at 893 (further

9

explaining that "mail fraud conspiracy depends so crucially on the underlying fraud that the fraud also must be specified in the applicable count").

Evidentiary determinations as to the activities engaged in by the defendants are improper at this stage of the proceedings. U.S. v. Mubayyid, 476 F.Supp.2d at 51 & n. 7.  Simply stated, "A court should not inquire into the sufficiency of the evidence before the indicting grand jury."  U.S. v. Maceo, 873 F.2d 1, 3 (1st Cir. 1989).  "Any other rule would force criminal defendants and the court to bear two trials on the charges" and allow a defendant to "insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury."  Id.

Section 371 criminalizes a conspiracy to commit an offense against the United States.  The elements of the offense require the government to establish that:  "(1) a conspiracy existed; (2) the defendant knew of and voluntarily participated in the conspiracy; and (3) there was an overt act in furtherance of the conspiracy."  U.S. v. Munoz-Franco, 487 F.3d 25, 45-46 (1st Cir. 2007) (charging conspiracy in violation of section 371 as well as in violation of three other conspiracy statutes); U.S. v. Morales-Rodriguez, 467 F.3d at 8 (section 371 requires the government to prove "the existence of a conspiracy, the defendant's knowledge of it, and his voluntary participation in it").  The government must show "both intent to agree and intent

to commit the substantive offense." U.S. v. Munoz-Franco, 487 F.3d at 45; accord U.S. v. Morales-Rodriguez, 467 F.3d at 8 ("government must prove that the defendant had an intent to agree and an intent to effectuate the object of the conspiracy"). Although there must be an agreement, it "may be shown by a concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." U.S. v. Munoz-Franco, 487 F.3d at 45-46.

The presently charged section 371 conspiracy, commonly known as a Klein conspiracy,[6] revolves around the concealment of the taxable income and profits of Number One Foundations.  In such a conspiracy, the purpose must be the tax fraud such as a "false reporting in someone's tax filings." United States v. Goldberg, 105 F.3d at 773.  Engaging in a conspiracy where tax fraud is "merely a foreseeable consequence of the conspiratorial scheme" is not sufficient.  Id.

A section 371 Klein conspiracy oftentimes presents a difficulty distinguishing between mere tax evasion and an agreement or conspiracy to evade taxation.  This case is no

---

[6] "A conspiracy to defraud the United States by obstructing and impeding the Internal Revenue Service in the collection of taxes is often referred to as a Klein conspiracy." U.S. v. Cambara, 902 F.2d 144, 146 (1st Cir. 1990) (citing United States v. Klein, 247 F.2d 908 (2d Cir.1957), abrogated on other grounds by United States v. Martinez-Salazar, 528 U.S. 304 (2000); accord U.S. v. Goldberg, 105 F.3d 770, 773 (1st Cir. 1997) (Klein conspiracy takes "its name from" the Klein decision which involved "a complex scheme designed to escape taxes").

exception.  After all, "'The failure to disclose income is, without more, generally insufficient to support a conviction for a Klein conspiracy.'"  U.S. v. McKee, 506 F.3d 225, 239 (3rd Cir. 2007) (ellipses omitted).  There is also nothing illegal about asking a bank teller to convert customer checks of a business into treasurer's checks or checks payable to the business owner. Where, however, the purpose of the conversions and the under reporting of gross receipts on a Schedule C is to deprive the government of taxable income thereby escaping income taxes the conspiracy can ripen into a section 371 Klein conspiracy.  The purpose must, in addition, be a shared or common unlawful purpose between two or more people.[7]

The means to accomplish the common illicit purpose, however, need not be unlawful.  U.S. v. Cambara, 902 F.2d at 147 ("conspiracy statute does not require that unlawful means be used to achieve the unlawful goal of the conspiracy").  As explained by the First Circuit in Cambara in the context of a multipurpose conspiracy:

> The conspiracy statute does not require that unlawful means be used to achieve the unlawful goal of the conspiracy.  Nor must the government prove that tax evasion was the sole motive, or even the primary motive, of the co-conspirators. "If a tax evasion motive plays any part in a scheme, the offense can be made out even though the scheme may have other purposes such as the concealment of other crimes."

U.S. v. Cambara, 902 F.2d at 147 (citation omitted).

---

[7] At oral argument, Steven Belanger's counsel pointed out that the government did not charge the defendants' tax preparer.

The defendants present a cogent and well versed argument that the deficiency in gross receipts, without more, does not show that they had the necessary agreement with the necessary illicit purpose.  Turning to the Superceding Indictment, it defines the purpose as defrauding the United States by concealing the taxable income and profits of Number One Foundations.

As part of the conspiracy with this illegal purpose, both defendants understated the gross receipts of Number One Foundations in their 1999 and 2000 tax returns.  In addition, they worked together at the same family business they owned and operated.  On an ongoing and consistent basis, Steven Belanger concealed the gross receipts by not depositing customer's checks into the bank account of Number One Foundations.  Robert Belanger knowingly participated in the fraud by not only filing the tax returns understating the gross receipts but also by receiving treasurer's checks that, given the circumstances, he knew were not always properly included as gross receipts of Number One Foundations.  According to the Superceding Indictment, Robert Belanger also impeded the IRS agents' investigation by falsely reporting to the agents, albeit in March 2001, that either he or his girlfriend purchased the treasurer's checks which he knew his son purchased using customer payments.

Although the defendants point out that the Superceding Indictment does not allege an actual tax loss to the government, the under reporting of gross receipts on the tax returns as well

as the flow of money from customer checks directly into cash or treasurer's checks to Robert Belanger helps accomplish the shared goal of concealing the taxable income and the true profits of Number One Foundations. See United States v. Goldberg, 105 F.3d at 772 ("triangular flow of money and services involved the plainly foreseeable preparation and filing of several false tax documents"). Each defendant effectuated the object of the purpose by understating the gross receipts of the family business they jointly owned.[8]

Both defendants also had the specific intent to join the conspiracy to accomplish the conspiracy's unlawful purpose of tax fraud. See generally U.S. v. Yefsky, 994 F.2d at 899 (court correctly "instructed the jury that it had to find that Yefsky joined the conspiracy with the specific intent to accomplish the unlawful purpose of the conspiracy, namely tax and mail fraud"). Notably, the Superceding Indictment supports a finding that the defendants agreed to understate the gross receipts of the family business they jointly owned, Number One Foundations. It is not difficult to conclude that the agreement to understate the gross receipts would conceal the true profit and income of the

_____

[8]   Notably, this is not the case of a father and son each understating his own income separate and apart from any understatement of gross receipts of a joint business. Rather, this case involves understating the gross receipts of a family business by two individuals who jointly own and operate that business. Moreover, Number One Foundations is not a large and diverse corporation where joint owners may operate separately and with relative autonomy.

business.

In somewhat similar circumstances involving an indictment charging two individuals with a conspiracy to file false tax returns, the Fifth Circuit upheld a jury's section 371 conspiracy verdict based upon the following facts:

> In this case, the government demonstrated that Van Eman and Wilson were the sole shareholders and directors of Sabine, and the jury could reasonably assume that they were familiar with the corporation's activities.  Both received wire transfers of substantial funds from Sabine on the same days and in the same amounts.  In tax returns prepared by different people and filed at different times, both failed to report the transfers as income in either 1980 or 1981, though both reported payments from Sabine that were made by check.  The Sabine tax return for the tax years ending March 31, 1981 and March 31, 1982 did not reflect the transfers to Van Eman and Wilson as compensation to officers, returns of capital, or loans, and the return for the tax year ending March 31, 1982 clearly understated the corporation's gross receipts.  From this evidence, the jury could reasonably infer the existence of an agreement between Van Eman and Wilson to file false income tax returns.

U.S. v. Wilson, 887 F.2d 69, 73 (5th Cir. 1989).

It is true that there may be an innocent as opposed to a conspiratorial explanation for the acts set forth in the Superceding Indictments.  On balance, however, the Superceding Indictment adequately contains the elements of a section 371 Klein conspiracy and does not provide a basis to dismiss Count One.

II.  Counts Two and Three

Counts two and three charge violations of section 7212(a).[9]

---

[9]  For the most part, the counts incorporate by reference the prior paragraphs of the Superceding Indictment.

Section 7212(a) imposes a fine and/or prison sentence on:

> Whoever corruptly or by force or threats of force . . .
> endeavors to . . . intimidate or impede any officer or
> employee of the United States acting in an official capacity
> under this title, or in any other way corruptly or by force
> or threats of force . . . obstructs or impedes, or endeavors
> to obstruct or impede, the due administration of this title
> . . ..

26 U.S.C. § 7212(a).

Section 7212(a) requires a defendant to act corruptly, by force or by threats of force.  It also "reaches two different kinds of offenses."  United States v. Bowman, 173 F.3d 595, 598 (6th Cir. 1999).  The first clause aims "at endeavors to intimidate or impede an officer or employee of the United States, corruptly or by force of threat."  Id.  The second catch all or omnibus clause pertains to other activities that "may 'obstruct or impede the due administration' of the internal revenue laws." Id.  The disjunctive language of section 7212(a) thus means that a defendant violates section 7212(a) "by either (1) corruptly or by force or threats of force endeavoring to intimidate or impede; or," under the omnibus clause, "by (2) in any other way corruptly or by force or threats of force impeding administration of the tax laws."  U.S. v. Bostian, 59 F.3d 474, 477 (4th Cir. 1995) (quoting section 7212(a); internal quotation marks omitted).

Both Count Two and Count Three charge that Steven and Robert Belanger acted "corruptly" as opposed to by force or threat of force.  (Docket Entry # 15, ¶¶ 34 & 42).  The second, fourth, fifth, eighth, ninth, tenth and eleventh circuits uniformly

16

conclude that one acts "corruptly" within the meaning of section
7212(a)'s omnibus clause when the person acts with the intention
to secure improper benefits or advantages for oneself or others.
See U.S. v. Dean, 487 F.3d 840, 853 (11th Cir. 2007) ("[o]ur
Pattern Jury Instruction . . . advises that a defendant acts
'corruptly' if he acts 'knowingly and dishonestly with the
specific intent to secure an unlawful benefit either for himself
or another'"), cert. denied,  U.S.  , 2008 WL 482040 (Feb. 25,
2008); United States v. Massey, 419 F.3d 1008, 1010 (9th Cir.
2005) ("district court correctly instructed the jury that
'corruptly' means 'performed with the intent to secure an
unlawful benefit for oneself or another'"), cert. denied, 547
U.S. 1132 (2006); United States v. Kelly, 147 F.3d 172, 176 (2nd
Cir. 1998) (upholding instruction defining corruptly as "'to act
with the intent to secure an unlawful advantage or benefit either
for one's self or for another'"); United States v. Wells, 163
F.3d 889, 897 (4th Cir. 1998) ("[w]e have interpreted the term
'corruptly' to mean acting with the intent to secure an unlawful
benefit for oneself"); United States v. Winchell, 129 F.3d 1093,
1098 (10th Cir. 1997) (to act corruptly under omnibus clause
"'means to act with the intent to secure an unlawful benefit
either for oneself or for another'"); United States v. Yagow, 953
F.2d 423, 427 (8th Cir. 1992); United States v. Reeves, 752 F.2d
995, 1001-1002 (5th Cir. 1985); United States v. Brennick, 908
F.Supp. 1004, 1010-1011 (D.Mass. 1995).

In moving to dismiss counts two and three, the defendants initially argue that the Superceding Indictment does not allege the hiding of gross receipts from the IRS.  (Docket Entry # 37, p. 3).  Rather, the Superceding Indictment only alleges that they did not completely disclose the gross receipts to their tax preparer, according to the defendants.  To the contrary, however, the Superceding Indictment states that "the tax returns filed by" Steven and Robert Belanger "understated the 1999 and 2000 gross receipts of Number One Foundations . . .."[10]  (Docket Entry # 15, ¶ 12).

The defendants also argue that they lack the state of mind required under the statute's omnibus clause, which prohibits a corrupt endeavor "in any other way" to impede the administration of tax laws.  Citing <u>United States v. Kassouf</u>, 144 F.3d 955 (6th Cir. 1998), they submit that the omnibus clause is limited to criminalizing conduct which has the natural effect of impeding a pending IRS action "of which the defendant had notice."  (Docket Entry # 37).  According to the defendants, improper intent under section 7212(a) requires that the defendant have "notice of some impending or ongoing official proceedings" in order to act corruptly.  (Docket Entry # 37).  They point out that there has

---

[10]  The additional argument regarding the dismissal of the original indictment with prejudice is unavailing for reasons stated in footnote three.

been no audit[11] or effort to impede the collection of taxes.
They further note that they conducted their activities in plain
sight and the issuance of the treasurer's checks does not
generate the filing of a CTR.

As previously articulated, "An indictment is sufficient if
it (1) contains the elements of the offense charged and fairly
informs the defendant of the charge against which he must defend,
and (2) enables him to plead an acquittal or conviction in bar of
future prosecutions for the same offense." U.S. v. Sedlak, 720
F.2d at 719; accord U.S. v. Yefsky, 994 F.2d at 893 (indictment
sufficient "if it contains the elements of the offense charged,
fairly informs the defendant of the charges against which he must
defend, and enables him to enter a plea without fear of double
jeopardy").[12] An indictment is "generally sufficient" if the
indictment "'set[s] forth the offense in the words of the statute
itself,' as long as those words set forth all the elements of the
offense without any uncertainty or ambiguity." U.S. v. Serino,
835 F.2d at 929; see also U.S. v. Yefsky, 994 F.2d at 893

---

[11]   The Superceding Indictment does not identify or refer
to an audit.

[12]   The defendants' argument is similar to the legal
argument considered prior to trial in a well reasoned, recent
Southern District of New York case, U.S. v. Willner, 2007 WL
2963711 at * 2 (S.D.N.Y. Oct. 11, 2007).  The defendant in
Willner moved to dismiss the section 7212(a) charge in the
Indictment as insufficient "since that statute requires that the
taxpayer be aware of, and intend to obstruct, an existing IRS
proceeding or inquiry."  Id.

(explaining that "mail fraud conspiracy depends so crucially on the underlying fraud that the fraud also must be specified in the applicable count").

Count Two with respect to Steven Belanger and Count Three with respect to Robert Belanger parrots the words of the statute by charging that:

> Beginning in or after January 1998, and continuing through in or about April 2001, within the Judicial District of Massachusetts and elsewhere, the defendant . . . pursuant to a common and continuing scheme and plan, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by engaging in the following . . ..

(Docket Entry # 15, ¶¶ 34 & 42).   The Superceding Indictment then identifies the facts supporting the statutory offense.[13]

The Superceding Indictment does not, however, identify any ongoing or pending tax investigation of which the defendants had notice while committing the prohibited conduct.   At most, the Superceding Indictment charges that the defendants acted

---

[13]   The background section sets out the facts as particularly noted in the last two paragraphs of the section. Both defendants hid the actual gross receipts of Number One Foundations from their tax preparer; filed tax returns that under reported the gross receipts of Number One Foundations; hid the actual gross receipts of Number One Foundations by not depositing the receipts into the bank account of Number One Foundations; and structured the purchase or re-issuance of treasurer's checks so as not to trigger the preparation or filing of a CTR.   Steven Belanger also hid the gross receipts of Number One Foundations from the IRS by purchasing the treasurer's checks from customer checks and instructed the bank teller to make the treasurer's checks payable to his father as opposed to Number One Foundations.   In March 2001, Robert Belanger falsely reported to IRS agents that he or his girlfriend purchased the treasurer's checks.

"corruptly" and that in March 2001 Robert Belanger told IRS agents that he or his girlfriend purchased the treasurer's checks.  The Superceding Indictment does not charge and the alleged facts do not support the existence of a pending government action under the tax code of which the defendants had notice.  The Superceding Indictment does not contain this alleged element of section 7212(a) or otherwise fairly inform the defendants of this element.  The defendants therefore urge a dismissal of the section 7212(a) charges.

The Sixth Circuit in <u>Kassouf</u>, cited and relied upon by the defendants, "held that 26 U.S.C. § 7212(a) requires the government to allege as elements of the offense, that a defendant was aware of a pending IRS action while committing the prohibited conduct."  <u>U.S. v. Bowman</u>, 173 F.3d at 599 (further noting that, "no IRS audit, investigation, or proceeding was underway" when Kassouf was engaged in the charged activities).  Thus, the <u>Kassouf</u> decision requires as an element of a section 7212(a) offense under the omnibus clause that the defendant "be aware of a pending IRS action while committing the prohibited conduct." <u>U.S. v. Bowman</u>, 173 F.3d at 599.

The Sixth Circuit in <u>Bowman</u>, however, sharply limited the reach of the decision.  <u>U.S. v. Bowman</u>, 173 F.3d at 600 ("[w]e hold that <u>Kassouf</u> must be limited to its precise holding and

facts").[14]   In fact, to date, "no circuit has adopted the Kassouf

reasoning."  U.S. v. Willner, 2007 WL 2963711 at * 4 (S.D.N.Y.

Oct. 11, 2007).   Furthermore, the Ninth Circuit does not require

the government to "prove that the defendant was aware of an

ongoing tax investigation to obtain a conviction under §

7212(a)."  United States v. Massey, 419 F.3d at 1010.

The plain language of the omnibus clause of section 7212(a)

does not require a pending prosecution.   Rather, it proscribes

conduct that "corruptly" endeavors to obstruct or impede "the due

administration of this title."  26 U.S.C. § 7212(a).   The plain

language "prohibits any effort to obstruct the administration of

the tax code, not merely of investigations and proceedings

conducted by the tax authorities."  U.S. v. Willner, 2007 WL

2963711 at * 5 (S.D.N.Y. Oct. 11, 2007).   Filing tax returns and

collecting taxes "is part of the administration of the tax laws"

---

[14]   The Sixth Circuit in Kassouf upheld the pretrial
dismissal of a section 7212(a) count involving a defendant who
failed to keep adequate records about transactions concerning the
partnerships and corporations he controlled.  United States v.
Kassouf, 144 F.3d at 953.  To make it more difficult for the IRS
to detect the activity, Kassouf transferred funds and filed tax
returns that did not disclose the transactions.  United States v.
Bowman, 173 F.3d at 598 (describing Kassouf decision).  Limited
to its facts, the Kassouf decision only supports a section
7212(a) charge in an indictment involving inadequate record
keeping and misleading the IRS by transferring funds and filing
false tax returns.  See United States v. Bowman, 173 F.3d at 598;
U.S. v. Willner, 2007 WL 2963711 at * 4 (S.D.N.Y. Oct. 11, 2007)
(discussing Bowman's limitation of the holding in Kassouf).

irrespective of the involvement of an IRS proceeding.[15]  See U.S.
v. Armstrong, 974 F.Supp. 528, 536 n. 14 (E.D.Va. 1997).
Administration of the tax code encompasses not only official IRS
proceedings.

Pointing to the admittedly similar language in the omnibus
provision in the obstruction of justice statute, 18 U.S.C. § 1503
("section 1503"), and the decision in United States v. Auguliar,
515 U.S. 593 (1995),[16] the defendants urge that the omnibus
clause requires the defendant to have notice of an impending
official proceeding.  (Docket Entry # 37, pp. 7-10).  Agreeing
with the Willner court's reasoning in distinguishing Aguilar in
the face of a similar argument, there is no need to alter the

_____

[15]  Even if this court found an ambiguity and examined the
legislative history of the omnibus clause, see Muniz v. Sabol,
__ F.3d __, 2008 WL 497056 at * 6 (1st Cir. Feb. 26, 2008) (turning
to statute's legislative history if statute's plain language
"does not address 'the precise questions at issue'"), it is not
enlightening.  As noted by one court, the scant legislative
history is "wholly silent on § 7212's omnibus clause."  U.S. v.
Williams, 644 F.2d 696, 699 (8th Cir. 1981).
    In making this statement, the Williams court referred to the
following history:

    H.R.Rep.No.1337, 83d Cong., 2d Sess. (1954), reprinted in
    (1954) U.S.Code Cong. & Ad.News 4019, 4574-75;
    S.Rep.No.1622, 83d Cong., 2d Sess. (1954), reprinted in
    (1954) U.S.Code Cong. & Ad.News 4621, 5254; H.R.Rep.No.2543,
    83d Cong., 2d Sess. (1954) (Conference Report), reprinted in
    (1954) U.S.Code Cong. & Ad.News 5280, 5344.

U.S. v. Williams, 644 F.2d at 699 n. 14.

[16]  The defendants also cite to a First Circuit case that
interprets section 1503.  United States v. Cintolo, 818 F.2d 980,
993 (1st Cir. 1987).

23

explanation which is as follows:

>The reasoning of <u>Kassouf</u> may also be questioned.  <u>Kassouf</u> rooted its nexus requirement in the Supreme Court's decision in <u>United States v. Aguilar</u>, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995), which found a similar nexus requirement in a superficially similar "omnibus" provision in the obstruction of justice statute, 18 U.S.C. § 1503. The analogy, however, is misleading.  Section 1503's omnibus provision, which prohibits endeavors "to influence, obstruct, or impede the due administration of justice," follows a long list of specific prohibitions of conduct that interfere with actual judicial proceedings.  515 U.S. at 598 . . ..

>The omnibus provision of § 7212(a), in contrast, prohibits endeavors "to obstruct . . . the due administration *of this title*."  Thus, the plain language of the statute prohibits any effort to obstruct the administration of *the tax code*, not merely of investigations and proceedings conducted by the tax authorities.

<u>U.S. v. Willner</u>, 2007 WL 2963711 at * 4-5 (S.D.N.Y. Oct. 11, 2007) (emphasis in original).  Moreover, while the <u>Aguilar</u> court imposed a nexus requirement on section 1503, the <u>Kassouf</u> court "did not disavow, the holdings of a number of pre-<u>Aguilar</u> cases which did not require that in order to impose liability under § 7212(a), the defendant must be aware of a pending IRS action." <u>U.S. v. Bowman</u>, 173 F.3d at 599.

Numerous other decisions sustain convictions under section 7212(a)'s omnibus clause notwithstanding the absence of a pending IRS investigation of which the defendant has notice.  <u>See</u>, <u>e.g.</u>, <u>United States v. Pullman</u>, 187 F.3d 816, 823 (8th Cir. 1999) (assisting other person's preparation of tax return that falsely reported the person's trust income); <u>United States v. Hanson</u>, 2

F.3d 942, 946-947 (9th Cir. 1993) (section 7212(a) violated by false 1099 and 1096 forms and fraudulent tax returns); United States v. Yagow, 953 F.2d 423, 424 (8th Cir. 1992) ("sending false IRS 1099 forms to individuals and institutions involved in" liquidation of the defendant's farm and filing "those forms with the IRS"); United States v. Williams, 644 F.2d 696, 700 (8th Cir. 1981) (the defendant violated section 7212(a) by aiding and abetting preparation and filing of false W-4s); United States v. Molesworth, 383 F.Supp.2d 1251, 1253-1254 (D.Idaho 2005); U.S. v. Armstrong, 974 F.Supp. at 539 (filing false tax forms to reduce taxes owed to IRS and furthering scheme with false supporting documents violated section 7212(a)).

Accordingly, the omnibus clause of section 7212(a) does not, as argued by the defendants, require the existence of an impending or ongoing official IRS proceeding of which the defendant had notice.  The Superceding Indictment otherwise adequately contains the elements of section 7212(a) and "fairly informs" the defendants about the charges against which they must defend and enables them to enter a plea without fear of double jeopardy.  U.S. v. Yefsky, 994 F.2d at 893; U.S. v. Sedlak, 720 F.2d at 719.  No more is required.


<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court

**RECOMMENDS**[17] that the motions to dismiss (Docket Entry ## 36 &
37) be **DENIED**.


                         __/s/ Marianne B. Bowler_____
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge

---

[17] Any objections to this Report and Recommendation must be
filed with the Clerk of Court within ten days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection. Any party may respond to another
party's objections within ten days after service of the
objections. Failure to file objections within the specified time
waives the right to appeal the order. <u>United States v. Escoboza
Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v.
Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).